UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GRAPHIC COMMUNICATIONS CONFERENCE - INTERNATIONAL BROTHERHOOD OF TEAMSTERS LOCAL 404M,<br><br>Plaintiff,<br><br>v.<br><br>THE BAKERSFIELD CALIFORNIAN,<br><br>Defendant. | CIV-F-08-0302 AWI TAG<br><br>ORDER RE: MOTION FOR PRELIMINARY INJUNCTION |

**I. History**[1]

Plaintiff Graphic Communications Conference represents 17 pressroom employees ("Workers") of Defendant the Bakersfield Californian. The Workers are covered under a collective bargaining agreement ("CBA") that runs through August 2009. On January 15, 2008, Defendant announced its intention to subcontract all pressroom employment, as well as other functions, to Brad Mosely, Inc. ("BMI"), and to terminate the Workers on March 17, 2008. The Workers' benefits would end on that date with the exception of health care coverage which would end on March 31, 2008. Plaintiff filed a grievance January 17, 2008 in accordance with

---

[1]The factual history is provided for background only and does not form the basis of the court's decision; the assertions contained therein are not necessarily taken as adjudged to be true. The legally relevant facts relied upon by the court are discussed within the analysis.

Article XXIII, Grievance and Arbitration Procedure of the CBA.  The grievance has proceeded to arbitration.  Defendant and Plaintiff have agreed to Douglas Collins as arbitrator.  The arbitration will take place on March 26, 2008 with all briefs to be filed by March 31, 2008.  Arbitrator Collins is required to issue his judgment within 30 days of the submission of briefs, but the parties have agreed to request that he do so by April 21, 2008.

Defendant intends to move forward with the subcontract and terminate all Workers on March 17, 2008.  BMI has hired six of the Workers in some capacity; the others would lose their jobs in the pressroom.  The contract between Defendant and BMI ("BMI Contract") specifies that if implementation of the contract is delayed due to intervention by a third party (i.e. Plaintiff), Defendant must pay BMI $333,333 per month in compensation.  Plaintiff has filed this suit, seeking a preliminary injunction to prevent the Workers from being terminated. Docs. 1 and 5.  The court's jurisdiction is based on the Labor Management Relations Act (29 U.S.C. §185(a)). Defendant opposes the motion. Doc. 17.  A hearing on the matter was held on Friday, March 14, 2008.

Plaintiff also filed a motion to strike a declaration which made reference to and relied upon a document which was not filed as an attachment. Doc. 34.  Defendant stated the omission was accidental and promptly filed the missing document. Docs. 35 and 38.  In response, Plaintiff withdrew its motion to strike at the hearing.

**II. Legal Standards**

A preliminary injunction may issue if a moving party establishes: (1) a likelihood of success on the merits and the possibility of immediate irreparable injury, or (2) the existence of serious questions going to the merits and that the balance of hardships tips heavily in its favor. See Metro Publishing, Ltd. v. San Jose Mercury News, 987 F.2d 637, 639 (9th Cir. 1993). "These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." Oakland Tribune, Inc. v. Chronicle Pub. Co., 762 F.2d 1374, 1376 (9th Cir. 1985).  Alternatively, the traditional test requires a plaintiff to establish "(1) a strong likelihood of success on the merits, (2) the

possibility of irreparable injury to plaintiffs if preliminary relief is not granted, (3) a balance of hardships favoring the plaintiffs, and (4) advancement of the public interest (in certain cases)." Southwest Voter Registration Education Project v. Shelley, 344 F.3d 914, 918-9 (9th Cir. 2003), quoting Johnson v. Cal. State Bd. of Accountancy, 72 F.3d 1427, 1430 (9th Cir. 1995).  To receive temporary injunctive relief under any articulation of the relevant test, the moving party must show a "significant threat of irreparable injury, irrespective of the magnitude of the injury." Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc., 109 F.3d 1394, 1397 n.1 (9th Cir. 1997), quoting Big Country Foods, Inc. v. Board of Educ., 868 F.2d 1085, 1088 (9th Cir. 1989).

### III. Discussion

Courts are ordinarily barred by the Norris-LaGuardia Act from issuing injunctions in labor disputes. See  29 U.S.C. §104.  The U.S. Supreme Court has carved out a narrow exception permitting injunctions enjoining a strike in cases involving arbitration. See Boys Markets, Inc. v. Retail Clerk's Union, 398 U.S. 235, 248 (1970).  Subsequent precedent has made clear that injunctions enjoining the employer in cases involving arbitration (commonly termed "reverse Boys Markets" situations) are similarly permitted. See Newspaper & Periodical Drivers' & Helpers' Union, Local 921 v. San Francisco Newspaper Agency, 89 F.3d 629, 632 (9th Cir. 1996).  Plaintiff seeks a reverse Boys Markets injunction.

In reviewing motions for preliminary injunctions of this nature, courts review "the following considerations: (1) whether the collective bargaining agreement contains a mandatory arbitration provision; (2) whether the underlying dispute is arbitrable; (3) whether the party seeking arbitration is prepared to arbitrate; and (4) whether the issuance of an injunction would be warranted under ordinary principles of equity. The fourth consideration turns on whether breaches are occurring and will continue, or have been threatened and will be committed; whether the breaches have caused or will cause irreparable injury to the Union; and whether the Union will suffer more from the denial of an injunction than will the Agency from its issuance." Newspaper & Periodical Drivers' & Helpers' Union, Local 921 v. San Francisco Newspaper Agency, 89 F.3d 629, 634 (9th Cir. 1996); see also Amalgamated Transit Union, etc. v.

Greyhound Lines, Inc., 529 F.2d 1073, 1077 (9th Cir. 1976), vacated and remanded on other grounds.  In addition, any injunction must comply with Ninth Circuit precedent in Amalgamated Transit Union v. Greyhound Lines, Inc., 550 F.2d 1237 (9th Cir. 1977), commonly referred to as Greyhound II.[2]  As Plaintiff has not met standard required by Greyhound II, the court limits its analysis on the factors contained therein.

**A. Greyhound II Factors**

There is some confusion in interpreting Greyhound II, which dealt with a reverse Boys Markets situation.  The opinion states:

> An undertaking to preserve the status quo pending arbitration would be to Greyhound what an undertaking not to strike would be to a union. The promisee of each undertaking would obtain its benefits in exchange for a consideration furnished by it. In this case, however, the Union's promise to submit the dispute to arbitration and not to strike could not have been given in exchange for an express promise by Greyhound to preserve the status quo because no such promise was made.
>
> Moreover, no basis exists for finding such a promise implied in fact. While a promise to submit a dispute to arbitration may justify a finding of an implied duty not to strike, such a promise does not imply a duty on the part of the employer to preserve the status quo pending arbitration. The source of this difference is that a strike pending arbitration generally will frustrate and interfere with the arbitral process while the employer's altering the status quo generally will not. The implication of a duty not to strike may be essential to carry out promises to arbitrate and to implement the private arrangements for the administration of the contract. Ordinarily there will exist no such necessity to imply a duty to preserve the status quo. In any event, it is clear that in this case the arbitration of the dispute will be unaffected by Greyhound's alteration of the status quo. Should Greyhound be wrong in its position in arbitration the situation can be restored substantially to the status quo ante.

Amalgamated Transit Union v. Greyhound Lines, Inc., 550 F.2d 1237, 1238-39 (9th Cir. 1977). Based on the plain text, there are two factors in determining if an action can be enjoined: (1) an explicit or implicit promise to preserve the status quo and (2) deleterious effect on arbitration. The second factor has been termed the "frustration of arbitration" standard and has been widely adopted.  "The arbitration process is rendered meaningless only if any arbitral award in favor of the union would substantially fail to undo the harm occasioned by the lack of a status quo

---

[2]As discussed below, the case law in this field is fragmented.  The precise relationship between the Greyhound II factors to those considerations listed in San Francisco Newspaper is unclear.

**4**

injunction....The arbitral process is not rendered 'meaningless,' however, by the inability of an arbitrator to completely restore the status quo ante or by the existence of some interim damage that is irremediable. The 'frustration of arbitration' standard preserves the effectiveness of the arbitral process which the parties have agreed upon. By requiring more than a minimal showing of injury for the issuance of an injunction, the standard also guards against undue judicial interference with the employer's ability to make business decisions." <u>Newspaper & Periodical Drivers' & Helpers' Union, Local 921 v. San Francisco Newspaper Agency</u>, 89 F.3d 629, 634 (9th Cir. 1996), quoting <u>Niagara Hooker Employees Union v. Occidental Chemical Corp.</u>, 935 F.2d 1370, 1378 (2nd Cir. 1991).  The Seventh Circuit has said courts "focus into a single concept the twin ideas of irreparable injury and frustration of arbitration. An injunction in aid of arbitration is appropriate, therefore, only when the actual or threatened harm to the aggrieved party amounts to a frustration or vitiation of arbitration." <u>International Ass'n of Machinists & Aerospace Workers v. Panoramic Corp.</u>, 668 F.2d 276, 286 (7th Cir. 1981).  The first factor, on the other hand, has been universally criticized as problematic by the other circuits.

   The confusion begins with the fact that the precise relationship between these two factors is unclear.  From the plain text, it appears that both factors need to be met before any injunction can issue.  Reading the two factors to be conjunctive renders the employer's promise to enter arbitration (distinct in the <u>Greyhound II</u> framework from a promise to preserve the status quo) potentially illusory as the employer would be free to undermine the arbitration by making changes that are irreversible.  This error in the analysis has been explicitly pointed out and criticized by at least two other circuits. See <u>Independent Oil & Chemical Workers, Inc. v. Procter & Gamble Mfg. Co.</u>, 864 F.2d 927, 930-31 (1st Cir. 1988) ("the courts must not interfere unless the actions taken or threatened by one of the parties would render the outcome of any arbitration which might follow meaningless. Elementary logic suggests this to be an appropriate point of demarcation for a very basic reason: notwithstanding the deference normally due to the arbitration agreement, a dispute-resolution mechanism which would be unable to repair the damage done by a party's unilateral actions would be useless. Such mechanisms would themselves become manipulable, warping the systemic balance and binding parties to inaction in

the face of imminent harm. That, then, represents the frontier past which judicial intervention seems justified; the need to prevent the siren song of open labor-management warfare from becoming an industrial anthem demands that courts not permit one party to turn the other into an unwilling Ulysses. The Ninth Circuit's interpretation of the Norris-LaGuardia exception runs afoul of these prudential principles. [Greyhound II] has as its premise what amounts to a lopsided vision of the covey of obligations arising in connection with collective bargaining pacts. Under such a view, an arbitration clause implicitly binds the union not to strike, but does not implicitly bind the employer to preserve the status quo"); International Ass'n of Machinists & Aerospace Workers v. Panoramic Corp., 668 F.2d 276, 282 (7th Cir. 1981) ("The [Greyhound II] approach breaks down, however, once it is conceded that a duty to preserve the status quo pending arbitration may be implied in order to prevent frustration of the arbitral process. For then the search for an express obligation-actively undertaken-to preserve the status quo is superfluous, and the propriety of a status quo injunction comes to depend on whether the employer action sought to be enjoined will in fact frustrate the arbitral process").  They, along with the Fourth Circuit have adopted a rule that permits injunctions solely when a frustration of arbitration type change is threatened. See Lever Bros. Co. v. International Chemical Workers Union, 554 F.2d 115, 122 (4th Cir. 1976) (in rejecting the argument that no injunction should issue because there was no agreement to preserve the status quo, nevertheless stated "The reasonableness of our holding is consonant with the Ninth Circuit decision in Greyhound Lines II wherein that court also recognized that: 'in any event, it is clear that in this case the arbitration of the dispute will be unaffected by Greyhound's alteration of the status quo. Should Greyhound be wrong in its position in arbitration the situation can be restored substantially to the status quo ante.'")

     Other circuits have come to a conclusions similar to a disjunctive reading of the Greyhound II factors, finding an injunction appropriate when there is either a frustration of arbitration type change or an explicit promise to preserve the status quo. See Niagara Hooker Employees Union v. Occidental Chemical Corp., 935 F.2d 1370, 1378 (2nd Cir. 1991) ("Independent of whether an injunction is available under the 'frustration of arbitration' standard, we also hold that a union may obtain a status quo injunction where an employer has clearly

6

violated an express promise to maintain the status quo pending arbitration or to refrain from using some method of self-help, where the dispute is arbitrable and the traditional requirements of equity, including irreparable harm, have been satisfied); Gulf Coast Industrial Workers' Union v. Exxon Co., U.S.A., 712 F.2d 161, 165 (5th Cir. 1983) ("while strikes over arbitrable grievances can be enjoined -- where the bargaining agreement contains an agreement to arbitrate them and not to strike -- so as to enforce the agreement of the parties about how such grievances are to be resolved, a different rule obtains where, as here, the parties' agreement does not both specify arbitration as the means of resolving the dispute in question and forbid self-help by strike or other economic weapon. That rule appears to be that only where the arbitration process to which the parties have agreed will be frustrated or rendered nugatory by one party's self-help measure will use of that measure be enjoined -- and only then when the injunction is otherwise warranted under ordinary principles of equity"); Local Union No. 884, United Rubber, Cork, Linoleum & Plastic Workers v. Bridgestone/Firestone, 61 F.3d 1347, 1355 (8th Cir. 1995) ("As we have held in other arbitration cases...the labor arbitration cases also allow for a preliminary injunction in aid of arbitration where there is an express agreement in the collective bargaining agreement to maintain the status quo pending arbitration. There is generally no requirement, however, that an express agreement to maintain the status quo is necessary in these cases before a federal court can issue a Boys Markets type of injunction"). As the Fifth Circuit points out, "Adding implied undertakings to such a hard fought out, complex and specific thing as a collective bargaining agreement -- where bargaining over what is to be omitted is likely to be fully as strenuous as that over what is included -- is a parlous business, however, and one inviting arbitrary court action." Gulf Coast Industrial Workers' Union v. Exxon Co., U.S.A., 712 F.2d 161, 165 n.4 (5th Cir. 1983).

These criticisms have been born out by the application of Greyhound II within the courts of the Ninth Circuit. Greyhound II has not been often cited and has been inconsistently applied. One Northern District case reads the two factors as disjunctive, acting as distinct and separate means of obtaining an injunction. Oakland Local, American Postal Workers Union v. United States Postal Service, 1981 U.S. Dist. LEXIS 13960, *3 (N.D. Cal. 1981) ("Courts allow for

exceptions to this policy when the injunction is necessary to protect the arbitration process itself *or* when there was an implied promise by the union to maintain the status quo pending resolution of the dispute. Plaintiff meets the requirements for both exceptions.") (emphasis added).  Another Northern District case arguably conflated the two prongs, collapsing it into the frustration of arbitration standard. United Electrical, Radio & Machine Workers v. Simpson Mfg. Co., 1983 U.S. Dist. LEXIS 19362, *8-9 (N.D. Cal. 1983) ("Here, if the Company binds itself contractually to the new site, the promise to arbitrate will be rendered hollow. It is unrealistic to expect an arbitrator to order the Company to refrain from relocating when the relocation is already a fait accompli. *Consequently* this Court concludes that the Company impliedly promised to maintain the status quo pending arbitration of the present dispute") (emphasis added).

      The Ninth Circuit authority discussing the situation has not absolutely clarified the situation but suggests that both factors are necessary for any injunction to issue.  One case characterized Greyhound II's holding as "the injunction was improperly issued where it was clear that 'the arbitration of the dispute [would] be unaffected by Greyhound's alteration of the status quo,' and where there was 'neither an express nor implied in fact promise by Greyhound to preserve the status quo.'" Newspaper & Periodical Drivers' & Helpers' Union, Local 921 v. San Francisco Newspaper Agency, 89 F.3d 629, 633 (9th Cir. 1996), citations omitted.  Another Ninth Circuit opinion stated, "A preliminary injunction requiring an employer to preserve the status quo pending arbitration is improper absent either an express or implied-in-fact promise by the employer to do so....Furthermore, the situation can be restored substantially to the status quo ante if the union prevails on its breach of contract claims in arbitration." Utility Workers of America, Local No. 246 v. Southern California Edison Co., 852 F.2d 1083, 1088 (9th Cir. 1988). Binding Ninth Circuit precedent dictates that Plaintiff must show that both factors are met before any injunction can issue.

**B. Explicit or Implicit Promise to Preserve the Status Quo**

      In this case, the court finds that the CBA includes an implicit promise to preserve the status quo pending arbitration.  Plaintiff represents, "Article XXIII of the CBA establishes a

8

grievance and arbitration procedure for the resolution of disputes arising out of the interpretation or application of the CBA or any violation of the CBA. (Article XXIII, Section 2) Article XXIII requires that any grievance not resolved through the Joint Standing Committee (comprised of two representatives of management and two representatives of the union) may be referred to arbitration by the union or the employer. (Article XXIII, Sections 6 and 7)." Doc. 1, Complaint, at 3:22-28.  Section 3 states, "When any grievance arises, *there shall be no interruption of work or other violation of this Agreement*, but the dispute shall be settled as promptly as possible in the following manner..." Doc. 8, Part 2, CBA at 16, emphasis added.  Section 7 states, "Only the Union or the Employer may require arbitration of the other party to this Agreement." Doc. 8, Part 2, CBA, at 17.  Defendant, through careful reading of Section 3 through 6, argues that Section 3 only applies to Plaintiff and is not a bilateral promise to preserve the status quo. Doc. 17, Defendant's Opposition, at 11:21-28.  Defendant is correct that Sections 3 through 6 only refers to Plaintiff Union.  However, that reading of the CBA would essentially leave Section 7 dangling and non-operative.  Section 6 states "the Union may appeal in writing the grievance to arbitration." Doc. 8, Part 2, CBA, at 17.  The CBA does not similarly state when Defendant may appeal to arbitration.  Defendant does not represent that it may not require arbitration of grievance disputes, so the court reads the Section 3 "no interruption of work" requirement as applicable to both parties.

**C. Frustration of Arbitration/ Irreparable Injury**

As to frustration of arbitration, Plaintiff contends, "Arbitrator Collins may not be able to force The Californian to breach its agreement with BMI if it has already been implemented before he rules. Even an order of reinstatement may be a hollow remedy, especially when these employees have been forced to disrupt their lives to cope with this termination." Doc. 6, Plaintiff's Brief, at 8:8-11.  Plaintiff supplements, "The subcontracting carries with it the threat of permanent loss of jobs, because even for the relatively short time between the beginning of subcontracting and the decision from the arbitrator, the employees face economic hardship while waiting for the arbitrator's decision, including loss of health care, and other economic hardships

1  and diversions that could make it difficult to return to work if the arbitrator orders
2  reinstatement....They will be discouraged from returning, will be without union representation in
3  the interim, and may be left with the belief that their Union was powerless to prevent this
4  egregious and extreme violation of the CBA. This, too, is a form of irreparable harm." Doc. 33,
5  Plaintiff's Reply, at 9:5-15.
6        Permanent loss of employment which an arbitrator can not reverse clearly constitutes
7  irreparable injury and a frustration of arbitration.  Defendant states in argument, "If the Union
8  prevails in the arbitration, the arbitrator will be able to reinstate the employees and award them
9  full back pay if it finds a violation of the contract by this act....The arbitrator will be able to issue
10 a decision resolving the matter; and if the Union prevails, the arbitrator would have the authority
11 to order the displaced employees reinstated and paid any back pay owed to them. Furthermore,
12 there would be nothing preventing the Employer from fully complying with that order." Doc. 17,
13 Defendant's Opposition, at 13:7-8 and 14:9-12, emphasis in original.  Plaintiff notes that "those
14 statements are not made under oath." Doc. 33, Plaintiff's Reply, at 8:14-15.  At the hearing on
15 March 14, 2008, Defendant's counsel made the following categorical statements: Arbitrator
16 Collins would have full authority to reinstate the Workers and the CBA notwithstanding
17 Defendant's contract with BMI; Defendant would fully comply with such an order; and
18 Defendant would make alternate arrangements with BMI.  The court specifically relies on these
19 representations in ruling on this motion and considers Defendant (and any of its representatives)
20 estopped from arguing otherwise in any other forum.
21       Plaintiff notes the contract between BMI and Defendant specifies, "BMI shall have
22 exclusive possession and control of the TBC Facility and TBC shall not consent to or take any
23 action or fail to take any action that could impair or restrict BMI's ability to perform the
24 Services." Doc. 19, Ex. A, BMI Contract, at 10.  However, the BMI Contract as a whole is one
25 for labor services, and not a sale of any assets.  Again, the court relies on Defendant's
26 representations that it would fully comply with an order in favor of Plaintiff, including making
27 alternate arrangements with BMI.  Plaintiff admits the BMI Contract "calls for the press
28 operations to continue in the same building in which it now runs, using the same equipment now

being used." Doc. 6, Plaintiff's Brief, at 2:7-9.  The change involves no shifting of physical facilities or sale of physical equipment.  In other cases where frustration of arbitration has been found, physical or ownership changes appear to be the root cause of irreversibility.  For example, the Northern District issued an injunction because the physical relocation of a business was threatened. United Electrical, Radio & Machine Workers v. Simpson Mfg. Co., 1983 U.S. Dist. LEXIS 19362, *1-2 (N.D. Cal. 1983) ("[the Company] has given notice to its lessor that it will not renew its lease of the Redwood City facility, and pending approval by its attorney, the Company is now prepared to sign contracts for the construction of the Vacaville facilities. If these contracts are executed, the possibility that the Union could convince an arbitrator to order the Company to refrain from relocating would be greatly diminished if not extinguished since relocation would be a fait accompli.").  In contrast, the First Circuit found that an employer's proposal to put off sale of a warehouse building but to stop operations from the warehouse pending the arbitrator's decision was not a "frustration of arbitration." International Brotherhood of Teamsters, etc., Local Union No. 251 v. Almac's, Inc., 894 F.2d 464, 467 (1st Cir. 1990) ("Almac's President Segal testified that 'If I can start tomorrow and buy more merchandise, I can start in thirty days and buy more merchandise. The facility is there. All our equipment is there. We have not dismantled anything. We don't intend to dismantle anything.' Clearly, Almac's can comply with an arbitrator's order to restock the distribution center"); see also International Ass'n of Machinists & Aerospace Workers v. Panoramic Corp., 668 F.2d 276, 286 (7th Cir. 1981) ("The *proposed sale* of the Sintered Specialties Division would have resulted in the immediate loss of employment by 113 Panoramic workers represented by the Union. The purchaser, SSI, has no duty to rehire these employees and has expressed no specific desire to do so. Where, as here, employer action threatens a permanent loss of jobs, a damage remedy is inadequate") emphasis added.  In another case cited by Plaintiff, involving subcontracting, the Eastern District of New York did issue an injunction. Bakery Drivers Union, Local 802 v. S. B. Thomas, Inc., 1978 U.S. Dist. LEXIS 17085 (E.D.N.Y. 1978).  In that case, the union represented sales persons who sold and delivered the employer's bread products to restaurants and hotels; the employer decided to subcontract some of these activities while discontinuing service to several

11

establishments. The court found that "When a bakery discontinues service to customers, its competitors immediately solicit the accounts and offer attractive terms in order to win them over. New relationships are established overnight, and it is virtually impossible to recapture lost business. This is particularly true for restaurant accounts." Bakery Drivers Union, Local 802 v. S. B. Thomas, Inc., 1978 U.S. Dist. LEXIS 17085, *14 (E.D.N.Y. 1978). At base, it was not subcontracting that was the key consideration but the loss of business relationships between salespersons and customers. That is not a factor in this case.

In general, the hardships caused by temporary loss of employment does not constitute irreparable harm. "The injury complained of here is loss of employment for sixteen persons. The Union argues that loss of employment constitutes irreparable harm because awards of backpay and reinstatement, traditional remedies for such an injury, cannot fully compensate employees for the repossessions, foreclosures, and injury to credit stature which could accompany unemployment. We disagree insofar as loss of employment is, as it is here, solely the result of job eliminations by a solvent employer. Absent some indication of action on the part of the employer which could jeopardize its ability to reinstate affected employees or to pay them wages for the period of unemployment, we hold that loss of employment, even if occasioned by employer action which is subject to arbitration, is not irreparable harm and will not support a claim by the union for injunctive relief." Aluminum Workers International Union Local Union No. 215 v. Consolidated Aluminum Corp., 696 F.2d 437, 443 (6th Cir. 1982). "If disruption of workers' lives and habits was deemed sufficient harm on which to bottom injunctive relief, then the exception would swallow the rule, and the courts would be mired hip-deep in matters which Congress intended to remit to an arbitral forum." Independent Oil & Chemical Workers, Inc. v. Procter & Gamble Mfg. Co., 864 F.2d 927, 932 (1st Cir. 1988).

Similarly, loss of union representation for a short period of time does not qualify. Plaintiff cites to an Eastern District opinion for the proposition that "withdrawal of recognition inflicted on a union, is often irreparable." Reichard ex rel. NLRB v. Foster Poultry Farms, 425 F. Supp. 2d 1090, 1100 (E.D. Cal. 2006). The facts in that case distinguish it from the one at hand. In Reichard, the employer refused to recognize and bargain with a newly formed union. The

court found evidence that the employer was actively trying to undermine the union by telling the workers it did not exist and that they should not pay dues. Reichard ex rel. NLRB v. Foster Poultry Farms, 425 F. Supp. 2d 1090, 1100 (E.D. Cal. 2006). The employer was enjoined to recognize the union pending resolution of a National Labor Relations Board administrative proceeding which was expected to last between two to three years. In this case, Defendant recognizes Plaintiff Union. Further, Defendant states the parties to the case have agreed to ask Arbitrator Collins to issue a decision by April 21, 2008. Doc. 21, Chaffin Declaration, at 5:9-13. The harm in Reichard was the prospect of a newly formed union falling apart during the pendency of a long administrative process due to the hostile actions of the employer.

Health insurance coverage is different. Several courts have stated that loss of health insurance constitutes irreparable harm categorically. See Whelan v. Colgan, 602 F.2d 1060, 1062 (2nd Cir. 1979) ("the threatened termination of benefits such as medical coverage for workers and their families obviously raised the spectre of irreparable injury"); United Steelworkers of America v. Ft. Pitt Steel Casting, Div. of Conval-Penn, Inc., 598 F.2d 1273, 1280 (3rd Cir. 1979) ("[T]he possibility that a worker would be denied adequate medical care as a result of having no insurance would constitute 'substantial and irreparable injury.' Moreover, the risk of irreparable injury was not appreciably lessened merely because the employees allegedly would remain covered for 30 days after premium payments were terminated and because the employees thereafter would have the option to convert to individual policies. There was no assurance at the time the injunction was issued that the strike would end within 30 days; thus there was a significant risk that absent an injunction, the employees would be without insurance coverage. In addition, the likelihood that all of the employees could have exercised their right to obtain individual policies was problematic, because while the employees were on strike, they were not collecting their wages"); American Federation of Government Employees v. Callaway, 398 F. Supp. 176, 194 n.3 (N.D. Ala. 1975) (in dicta, "loss of broad-form medical-hospital insurance" is irreparable harm); Texaco Independent Union of Coraopolis Terminal v. Texaco, Inc., 452 F. Supp. 1097, 1107 (W.D. Pa. 1978) ("the suspension of health insurance protection could cause serious injury to employees that could not be remedied through arbitration"). Other courts have

required evidence of how loss of coverage would specifically affect individuals adversely. See Morgan v. Fletcher, 518 F.2d 236, 240 (5th Cir.1975) (loss of health insurance not to constitute irreparable harm when need for health services was only "conjectural"); Gonzalez v. Chasen, 506 F. Supp. 990, 999 (D.P.R. 1980) (loss of health insurance coverage constitutes irreparable harm where existing health issues documented).  The Eighth Circuit has implied (without discussion) that diminution in scope of health coverage does not constitute irreparable harm. See Local Union No. 884, United Rubber, Cork, Linoleum & Plastic Workers v. Bridgestone/Firestone, 61 F.3d 1347, 1354 (8th Cir. 1995) ("If the arbitrator agrees with Local 884 that the health benefits under the 1991 Master Agreement remained in effect pursuant to section (g) of the 1993 Memorandum of Agreement, then the arbitrator can order BF to repay all monthly premium payments and deductibles that the employees were wrongly deprived of and require reinstatement of the levels of medical and dental coverages for which the 1991 Master Agreement provided"). The only case coming from a court under the purview of the Ninth Circuit is ambiguous on the matter of proof: "There is, however, one area in which I find that lay-offs will likely result in irreparable harm, the kind of harm that cannot be remedied by an after-the-fact arbitration award. If lay-offs are effected by the end of this month, October, health care coverage for laid-off workers will terminate on November 30, 1982, before the grievance and arbitration process is likely to be completed. Substantial evidence in the record supports the finding, and I find, that the lack of health care benefits will result in many cases in the inability to obtain needed medical treatment and, in some cases, in the termination of current necessary treatment for employees or their dependents now covered by health insurance. The harm likely to result from termination of health benefits will be irremediable. Thus, with respect to health benefits only, I find that without injunctive relief pending arbitration, the award will be rendered a hollow formality." United Auto., etc. Local 645 v. General Motors Assembly Div., 1983 U.S. Dist. LEXIS 19159, *3-4 (C.D. Cal. 1983).

In this case, one of the Workers did submit a declaration stating "Some of the seventeen employees receive health insurance through their jobs at The California[n]. We have been told by The California[n] that it will end health insurance on March 31, 2008." Doc. 9, Willard

Declaration, at 3:16-18.  Plaintiff has provided no evidence of specific health care issues faced by any individual.  Absent that evidence, the court cannot find irreparable harm.  Defendant argues "The arbitrator could award [Workers] reimbursement of [their] retirement draw or amounts [they] may have to pay for medical expenses."  Doc. 17, Defendant's Opposition, at 13:27-28.  At the hearing, Defendant further represented that the arbitrator could order compensation for out-of-pocket medical costs or COBRA payments as part of an award in Plaintiff Union's favor.

### IV. Order

Plaintiff Graphic Communications Conference- International Brotherhood of Teamsters, Local 404M's motion for preliminary injunction against Defendant the Bakersfield Californian is DENIED.

IT IS SO ORDERED.

**Dated:   March 14, 2008**                    /s/ Anthony W. Ishii
                                                                UNITED STATES DISTRICT JUDGE